A90A0041. PARKING COMPANY OF AMERICA v. SUCAN.
(394 SE2d 411)

POPE, Judge.

Plaintiff/appellee Stanley E. Sucan brought suit against the defendant/appellant Parking Company of America seeking to recover the cost of repairs to his automobile which was damaged while parked in defendant's facility at Hartsfield Airport, and attorney fees. The evidence showed that Sucan had left his car in good condition in a permissible space in the parking lot for a three-day period, and that when he returned the car's exterior was so badly pitted it required a complete paint job and a new windshield to restore it to the same condition. Sucan and defendant's general manager inspected the area where he had parked and discovered that two adjacent cars had been damaged in the same manner. The area where these vehicles were parked was approximately 150 to 160 feet away from where the MARTA rail line was being constructed. Sucan filed a claim with defendant, which referred the matter to MARTA and its contractor to determine what construction was taking place at that time. At defendant's request he also obtained three written estimates of the cost of repairs. The MARTA contractor agreed to pay for replacement of the windshield. Although Sucan was assured by defendant at the time he reported the damage and for six months afterwards that it would take care of the paint repairs, this was not done. On April 15, 1988, Sucan wrote defendant that if he did not hear from it within five days, he would turn the matter over to his attorney. On May 3, 1988, having received no reply, Sucan's lawyer wrote defendant to request a resolution to the problem, stating that unless they received a response within seven days a lawsuit would be filed. No reply was received and on July 11, 1988, the instant suit was filed.

A bench trial was held and the trial court found that while Sucan's automobile was parked at defendant's parking lot a dangerous condition existed which was unknown to Sucan, but which defendant knew or should have known about; that this dangerous condition was the proximate cause of the damage to Sucan's car; and that defendant failed to warn him of the condition. The trial court concluded as a matter of law that defendant owed a duty to advise Sucan of the dan-

gerous condition that existed in the parking lot and that Sucan was entitled to recover the costs to repaint his car along with reasonable attorney fees. Appealing from this judgment, defendant argues that it had no duty to warn Sucan of the dangerous condition as he already knew the MARTA rail line was being constructed near the parking lot, and that there was insufficient evidence to support a finding that it caused Sucan unnecessary trouble or expense or was stubbornly litigious so as to entitle him to recover attorney fees. *Held:*

1. "In a bench trial the court sits as the trier of fact and his findings shall not be set aside unless clearly erroneous. OCGA § 9-11-52 (a). The clearly erroneous test is the same as the any evidence rule. Thus an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them." (Citations and punctuation omitted.) *Smith v. Carlton Farms*, 181 Ga. App. 743, 744 (2) (353 SE2d 624) (1987). " 'An owner of premises, as to invitees, owes a duty to exercise ordinary care for their protection to keep the premises safe, not *reasonably* safe. (Cits.)' [Cit.] 'A business invitor owes a nondelegable duty to protect [its] invitees from injury. . . .' [Cit.]" *Towles v. Cox*, 181 Ga. App. 194, 196 (351 SE2d 718) (1986). " 'As distinguished from defects in construction, where the rule is that the landlord is conclusively presumed to have knowledge thereof [cits.], mere defects in the maintenance of the premises must be shown to have existed for such a length of time, or under such circumstances as to actually or constructively put the owner of the [property] on notice thereof before he will be liable for injuries resulting therefrom. [Cits.]' [Cits.]" *Professional Bldg. v. Reagen*, 129 Ga. App. 183, 184 (199 SE2d 266) (1973).

On the trial of the case, the burden is on the plaintiff to show that there has been a sufficient length of time for the defendant to have constructive notice of the dangerous condition. Id. at 185. Defendant's general manager testified that the MARTA rail line construction near the parking facility had been going on since 1985 or early 1986, and that during that time they had at the direction of the city blocked off areas in the lot to keep cars out when construction was taking place. At the time involved here it was not blocked off, but no effort had been made "to observe the parking lot and see whether or not there was any kind of a fall-out from the construction on any of the cars parked in the lot," nor was any monitoring of the lot being done. Defendant knew, however, that this area was the site of construction work and because it "did actually observe the ongoing work . . . , a duty to inspect was specifically assumed. [Defendant was] thus on notice of the general manner in which the construction work was being performed." *Towles v. Cox*, supra at 196.

Because of the close proximity of the parking lot to the MARTA construction work and defendant's prior knowledge that consequences

of a generally injurious nature might result therefrom, in ordinary prudence it might have foreseen that some injury would result from its failure to observe the parking lot. See generally *Sims v. American Cas. Co.,* 131 Ga. App. 461 (1) (206 SE2d 121), aff'd 232 Ga. 787 (209 SE2d 61) (1974). Thus the trial court's finding that the defendant owed Sucan the duty of advising him of the existing dangerous condition was supported by some evidence and was not clearly erroneous so as to warrant reversal. *Gray v. Brooks,* 189 Ga. App. 560 (3) (376 SE2d 722) (1988).

2. The issue of bailment, argued by defendant on appeal, was not considered or ruled upon by the trial court and therefore presents nothing for review by this court.

3. Defendant protests the award of attorney fees on the ground that there was no *bona fide* controversy with respect to its liability to Sucan. Although we agree that defendant never denied responsibility, the claim for expenses of litigation was based on its failure to settle with Sucan while at the same time assuring him that the repairs to his car would be taken care of. Under OCGA § 13-6-11 expenses of litigation may be awarded if the plaintiff shows that the defendant acted in bad faith, or was stubbornly litigious, or put the plaintiff to unnecessary trouble or expense. "The plaintiff need not show that all three provisions of the statute are present, but only that one of the three conditions exists. [Cits.] The factual situation in the instant case is very similar to that in *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522 (191 SE2d 317) (1972), wherein the plaintiff's automobile was damaged by the defendant's cab and the defendant ignored her repeated requests to repair it. The court stated that it deplored the 'so sue me' attitude of such defendants, who have no valid reason for refusing to pay a claim, and held that the recovery of attorney fees was authorized. We find no error in the court's ruling." *U-Haul Co. of Western Ga. v. Ford,* 171 Ga. App. 744, 746 (4) (320 SE2d 868) (1984). Employing the any evidence standard of review, we conclude that the trial court did not err here in awarding attorney fees to Sucan. *Griffiths v. Phenix Supply Co.,* 192 Ga. App. 651 (3) (385 SE2d 789) (1989).

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED MAY 14, 1990.

*Thomas E. Magill, Cheri D. McLeod,* for appellant.
*Ira S. Zuckerman,* for appellee.